**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: July 14 2025

John P. Gustafson
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 24-32443 |
| | ) | |
| Butler Trucking LLC, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 25-03004 |
| | ) | |
| Butler Trucking LLC, | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CashFloit, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OF DECISION AND ORDER</u>

This adversary proceeding is before the court on Defendant CashFloit, LLC's Motion to Dismiss with Prejudice ("Motion") [Doc. #4], brought pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable in this proceeding by Federal Rule of Bankruptcy Procedure 7012(b).

Butler Trucking LLC ("Plaintiff" or "Debtor") commenced this Adversary Proceeding on January 31, 2025, by filing a Complaint [Doc. # 1] seeking: (i) a determination as to the validity, extent and priority of any lien held by CashFloit; (ii) a determination as to the secured status of, and to avoid any security interest in, the Plaintiff's personal property pursuant to 11 U.S.C. §506;

1

and (iii) the disallowance of any secured claim that CashFloit might file in the underlying chapter 11 bankruptcy case.   On March 17, 2025, Plaintiff filed an Objection to Defendant's Motion to Dismiss [Doc. #10].   The court held a pre-trial on March 27, 2025, at which Plaintiff's and Defendant's attorneys appeared by telephone.   For the reasons that follow, Defendant's Motion will be denied.

## FACTS ASSUMED FOR THE RULE 12(b) DETERMINATION

On December 17, 2024, Plaintiff, an Ohio limited liability company, filed a voluntary petition for relief under Chapter 11, Subchapter V, of the Bankruptcy Code. [Case No. 24-32443, Doc. #1].[1]   The Defendant is a limited liability company organized under the laws of the State of New York and is alleged to not be registered as a foreign corporation authorized to conduct business in Ohio. *See*, [Doc. #1, pp. 2-3, ¶¶ 9-10].[2]

Prior to Plaintiff's Chapter 11 filing, Defendant provided pre-petition financial services to the Plaintiff pursuant to a written agreement titled the Sale of Future Receipts[3] Agreement (the "MCA Agreement"), executed on or around November 25, 2024. [*Id.*, p. 5, ¶12].   The copy of MCA Agreement filed by Defendant expressly states that it is not a loan and shall be interpreted under New York law. [Doc. #5, p. 7, ¶22].   Under the MCA Agreement, Defendant asserts that it advanced $40,000 to the Plaintiff in exchange for the purchase of $56,800 in future business

---

1/   References to the docket in the "Main Case," Case No. 24-32443, will be cited as [Case No. 24-32443, Doc. #_]. References to the docket in this Adversary Case, Case No. 25-03004, will be cited as [Doc. #_].

2/   This matter comes before the court on Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable in bankruptcy adversary cases under Federal Rule of Bankruptcy Procedure 7012(b).   For purposes of this Motion all of the factual allegations in Plaintiff's Complaint are to be taken as true.

3/   It appears that the terminology used in merchant cash advance agreements has evolved from purchases of "future receivables" to purchases of "future receipts". *Compare*, *In re GMI Group, Inc*., 606 B.R. 467 (Bankr. N.D. Ga. 2019)("future receivables") and *In re Shoot The Moon*, 635 B.R. 797 (Bankr. D. Mont.)("future receivables") *with*, *In re McKenzie Contracting, LLC*, 2024 WL 3508375, 2024 Bankr. LEXIS 1712 (Bankr. M.D. Fla. July 19, 2024)("future receipts"); *J.P.R. Mech. Inc. v. Radium2 Cap., LLC (In re J.P.R. Mechanical Inc.)*, 2025 WL 1550541, 2025 Bankr. LEXIS (Bankr. S.D.N.Y. May 30, 2025)("future receipts").

25-03004-jpg   Doc 14   FILED 07/14/25   ENTERED 07/14/25 16:32:30   Page 2 of 21

receipts. [*Id.*, p. 1].   The MCA Agreement did not specifically identify any accounts or receivables to be sold.   The Plaintiff agreed to deliver 4.72% of its daily business receipts until Defendant received the full purchase amount. [*Id.*, p. 1; p. 2 at ¶3].   Defendant asserts that to effectuate this arrangement, Plaintiff authorized Defendant to initiate daily ACH debits of $405.71 from its designated deposit account. [Doc. #4, p. 2, ¶3; p. 4, ¶10].   The amount debited was subject to "reconciliation" based on actual receipts upon request. [*Id.*].

Defendant further asserts that to secure the obligations under the MCA Agreement, Plaintiff granted Defendant a security interest in substantially all of its personal property, including accounts, accounts receivable, inventory, general intangibles, equipment, cash, and other assets (the "Collateral"). [Doc. #4, p. 2, ¶4; Doc. #10, pp. 9-10, ¶4].   Defendant states that it perfected its security interest by filing a UCC-1 Financing Statement with the Ohio Secretary of State on November 25, 2024, under Document Number OH00286205149. [Doc. #10, p. 14, Ex. A]. Plaintiff's owner, Justin Butler, also executed a personal guaranty securing the performance of the obligations under the MCA Agreement. [Doc. #5, p. 1].

Plaintiff continued to operate its business and commingled collected receivables with its operating funds, and at no time were the receivables segregated or otherwise treated as sold to a third party. [Doc. #10, pp. 5-6].   Prior to the MCA Agreement and continuing up to the bankruptcy filing, Plaintiff had previously factored its accounts with another entity, Asset Funding Source LLC. [*Id.*].   Plaintiff contends that the transaction with Defendant constituted a loan, and that as of the petition date, it owed approximately $28,400.30 to CashFloit. [Doc. #1, pp. 3-4, ¶¶12, 14]. Moreover, Plaintiff contends Defendant's recovery under the MCA Agreement was not tied to the actual performance of any specific account but was instead structured around a set daily withdrawal from the Plaintiff's account, to be executed via ACH or electronic check regardless of

3

actual collections. [Doc. #10, p. 6].

Paragraph 5 of the MCA Agreement states:

5. **Nonrecourse Sale of Future Receipts (THIS IS NOT A LOAN).** Seller is selling a portion of a future revenue stream to Buyer at a discount, not borrowing money from Buyer. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Buyer. Seller acknowledges that it has no right to repurchase the Purchased Amount from Buyer. Buyer assumes the risk that Future Receipts may be remitted more slowly than Buyer may have anticipated or projected because Seller's business has slowed down, and the risk that the full Purchased Amount may never be remitted because Seller's business went bankrupt or Seller otherwise ceased operations in the ordinary course of business. Buyer is buying the Purchased Amount knowing the risks that Seller's business may slow down or fail, and Buyer assumes these risks based on Seller's representations, warranties and covenants in this Agreement that are designed to give Buyer a reasonable and fair opportunity to receive the benefit of its bargain. By this Agreement, Seller transfers to Buyer full and complete ownership of the Purchased Amount of Future Receipts and Seller retains no legal or equitable interest therein.

[Doc. #5, p. 3, ¶5].

Plaintiff does not appear to own any real property, and its primary assets consist of trucks and trailers used in its business operations. [Doc. 1, p. 5, ¶¶19-20]. Although Defendant's security interest purports to cover all personal property, Plaintiff asserts that there is no notation of lien on the certificates of title for Plaintiff's vehicles. [*Id.*, p. 6, ¶21]. Plaintiff's remaining personal property at the time of filing, as listed in its bankruptcy schedules, was valued at approximately $81,620, consisting of $80,000 in accounts receivable, $920 in cash, and $700 in office furniture and equipment. [*Id.*, p. 6, ¶22].

Plaintiff further asserts that three other creditors - the Small Business Administration ("SBA"), Fundation, and United First - each hold perfected security interests in its personal property, with claims totaling approximately $473,856.60. [Doc. #1, p. 6, ¶23]. These liens were perfected on May 20, 2020, April 4, 2023, and October 23, 2024, respectively, under UCC filings OH00240732081, OH00271865766, and OH00285434395. [*Id.*]. Plaintiff contends that

4

Defendant's security interest is junior to the liens held by the SBA, Fundation, and United First. [*Id.*, p. 6, ¶23].

Defendant filed a proof of claim in this case, asserting a secured claim in the amount of $40,000.00. [Case No. 24-32443, Claim No. 12-1]. In the Plaintiff's Motion for Authority to Use Cash Collateral (Case No. 24-32443, Doc. #7), the Plaintiff acknowledged that the Defendant may claim an interest in its cash collateral, and proposed adequate protection in the form of a replacement lien. [Doc. #10, p. 10]. Interim orders were entered by the court on four occasions (Case No. 24-32443, Docs. ##17, 42, 71 and 100), authorizing the Plaintiff to use cash collateral with the Defendant's interest subject to later adjudication. Plaintiff seeks a determination from the Bankruptcy Court regarding the validity, extent, and priority of Defendant's asserted lien/claim of ownership, and further requests that the court determine that Defendant holds a wholly unsecured claim under 11 U.S.C. §506(a), and that its lien is void under §506(d) due to lack of equity in the collateral and an inferior lien position. [Doc. #1, pp. 7-8, ¶¶33-34]. Finally, Plaintiff seeks disallowance of any secured claim Defendant may assert in the bankruptcy proceedings. [*Id.*, p. 8, ¶¶ 36-38].

## LAW AND ANALYSIS

### A. Rule 12(b)(6) Standard

Defendant moves to dismiss this case under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Rule 12(b)(6) applies in bankruptcy adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012. Federal Rule of Civil Procedure[4] 8(a)(2) provides that a claim for relief must contain a "short and plain statement

---

4/   Hereinafter references to the Federal Rules of Civil Procedure will appear as "Civil Rule ___" and reference to the Federal Rules of Bankruptcy Procedure will appear as "Bankruptcy Rule ___."

of the claim showing that the pleader is entitled to relief." In deciding a Civil Rule 12(b)(6) motion to dismiss, "the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint 'contains enough facts to state a claim to relief that is plausible on its face.'" *United States v. Ford Motor Co.*, 532 F.3d 496, 502 (6th Cir. 2008)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While Civil Rule 8(a)(2) does not require a complaint to set out detailed factual allegations, a "[p]laintiff's obligation to provide the 'grounds' for their claimed entitlement to relief 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011)(quoting *Twombly*, 550 U.S. at 555). Rather, "to survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

The United States Supreme Court explained the "plausibility" standard first set forth in *Twombly*:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"
> . . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

6

## B. Discussion

The transaction in issue is what is generally known as a "merchant cash advance", and an issue raised in the Motion to Dismiss is whether the MCA Agreement is a loan or a sale. The Defendant argues that the MCA Agreement constituted a true sale and that the receivables it purchased are not property of the estate under 11 U.S.C. §541. [Doc. #4, pp. 5-6, ¶¶13-14]. The Plaintiff disputes this, contending that the MCA Agreement was not a true sale, but rather a disguised financing arrangement. [Doc. #10, pp. 3-7]. The Complaint alleges that the MCA Agreement and transfers thereunder constitute a loan rather than a sale (or sales). [Doc. #1, ¶¶12, 13]; *and see, In re Martinez Quality Painting & Drywall, Inc.*, No. 22-30357, 2025 WL 828882, at *6 (Bankr. W.D.N.C. Mar. 14, 2025)("As a preliminary matter, the Complaint alleges that the MCA Agreements and Transfers thereunder constitute loans rather than sales, so the Court will treat them as loans for purposes of this [Civil Rule 12(b)(6)] analysis.").

Further, while Defendant takes the position that New York law "clearly provides that the transaction is not a loan." [Doc. #4, p. 2, ¶2]. However, recent case law does not necessarily support the assertion that the legal answer is "clear". *See e.g., J.P.R. Mech. Inc. v. Radium2 Cap., LLC (In re J.P.R. Mechanical Inc.)*, 2025 WL 1550541 at **6-9, 2025 Bankr. LEXIS at **16-27 (Bankr. S.D.N.Y. May 30, 2025)("The Agreements are Loans"); *Monday Funding v. Black Friday Deals AZ Inc.*, 85 Misc.3d 1286(A), 232 N.Y.S.3d 382 (Table), 2025 WL 1479316, 2025 NYNJ LEXIS 1718, 2025 N.Y. Slip Op. 50804(U) (Sup. Ct. N.Y. Cnty. May 13, 2025); *B&T Supplies, Inc. v. Gemj Chehebar Grat, LLC*, 2025 WL 831110 at *9, 2025 U.S. Dist. LEXIS 48435 at **25-26 (S.D.N.Y. March 17, 2025)("Plaintiffs plausibly allege that the MCA Agreements were unlawful loans.").

7

Moreover, as further discussed below, the ultimate issue of whether the substance of the transaction was Plaintiff "selling" unidentified future receipts to Defendant is a fact-intensive issue that cannot likely be resolved without the presentation of evidence at a hearing. *See*, *In re LTV Steel Co., Inc.*, 274 B.R. 278, 285 (Bankr. N.D. Ohio 2001)("[T]he ultimate issue of whether Debtor actually sold the receivables to [the creditor] is a fact-intensive issue that cannot be resolved without extensive discovery and an evidentiary hearing.").

  i. *Whether the Receivables Are Property of Debtor's Estate*

Defendant argues that by signing the MCA Agreement, the Debtor transferred all rights to the Receipts to Cashfloit until full payment was made. [Doc. #4, p. 6, ¶14]. Because the Debtor has not fully remitted the Receipts, Defendant asserts it no longer has any interest in the Receipts, and they are not part of the Debtor's bankruptcy estate. Therefore, the Debtor cannot use the Receipts or their proceeds for the benefit of the estate under §363, and any attempt to do so must be denied because the Receipts remain the exclusive property of Cashfloit until they are fully paid. [*Id.*, ¶15].

Section 541(a) of the Bankruptcy Code provides that upon the filing of a bankruptcy petition an estate is created consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). The estate created by the filing of a Chapter 11 petition is very broad, and property may be included in Debtor's estate even if Debtor does not have a possessory interest in that property. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 205-06, 103 S.Ct. 2309, 2313-14, 76 L.Ed.2d 515 (1983).

Defendant contends that the transaction between it and the Plaintiff must be characterized as a true sale. It points to Paragraph 5 of the MCA Agreement, which states:

By this Agreement, Seller transfers to Buyer full and complete ownership of the Purchased Amount of Future Receipts and Seller retains no legal or equitable interest therein.

[Doc. #5, p. 3, ¶5].

While this provision provides some support for Defendant's position, courts do not rely solely on the form or labels[5] used by the parties; rather, they scrutinize whether the economic risk of ownership truly transferred to the purported buyer. *See generally*, *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F.Supp.3d 2022 WL 2829913, 237, 247 (S.D.N.Y. 2022); *Lateral Recovery LLC v. Queen Funding*, LLC, 2022 WL 2829913 at *4 & *6, 2022 U.S. Dist. LEXIS 129032 at **12-13, **18-19 (S.D.N.Y. July 20, 2022); *In re Shoot The Moon, LLC*, 635 B.R. 797, 813-814 (Bankr. D. Mont. 2021)("a consideration that overlays and unites the factors is how the parties allocated risk. A sale typically occurs when the risk of loss from the purchased assets passes to the buyer. . .")(footnote omitted). Where that risk remains with the debtor, the transaction appears to be treated as a loan, and the receivables (or in this case, Receipts) remain property of the estate. *See e.g.*, *In re Burm*, 554 B.R. at 18; *In re Siskey Hauling Co., Inc.*, 456 B.R. 597, 6007 (Bankr. N.D. Ga. 2011); *Wiers Farm, Inc. v. Waverly Farms, Inc.*, No. 809-CV-1742-T-30TBM, 2011 WL 1296867, at *3 (M.D. Fla. Mar. 31, 2011); *Major's Furniture Mart, Inc. v. Castle Credit Corp.*, 602 F.2d 538, 545-46 (3d Cir. 1979).

However, at this stage in the proceedings the issue before the court is the Defendant's Motion to Dismiss. Accordingly, the court must accept the factual allegations in the Complaint

---

5/ "Under New York law, "[w]hen determining whether a transaction is a loan, substance -- not form -- controls." *Adar Bays, LLC v. GeneSYS ID, Inc*., 37 N.Y.3d 320, 157 N.Y.S.3d 800, 179 N.E.3d 612, 621-22 (N.Y. 2021)." *Lateral Recovery LLC v. Queen Funding*, LLC, 2022 WL 2829913 at *4, 2022 U.S. Dist. LEXIS 129032 at *12 (S.D.N.Y. July 20, 2022).

as true.   As in *Martinez Quality Painting & Drywall, Inc.*, the Complaint here alleges that the MCA Agreements and the transfers made under them constitute loans rather than true sales. While the *Martinez* decision accepted the allegation that the transactions are loans for motion to dismiss purposes, based on the issues presented, this allegation may – arguably - be a legal conclusion.   Nevertheless, the court must view properly pleaded facts in the light most favorable to the non-moving party, and there is substantial case law that supports Plaintiff-Debtor's position.

ii.  *Adequate Protection*

Next, Defendant argues it was entitled to adequate protection for the Debtor's continued use of Receipts. [Doc. #4, p. 7, ¶16].   It is unclear why making this allegation in response to this Adversary Proceeding would alter Defendant's status as either a loan creditor or a purchaser.

Under §363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral without either the secured creditor's consent or court authorization following notice and a hearing. Defendant argues that the Debtor initially acknowledged its status as a secured creditor by asserting that it had an interest in the Debtor's cash collateral, yet failed to provide for adequate protection as required under the Bankruptcy Code. [Doc. #4, p. 4, ¶9].   Defendant contends that the Debtor has since reversed course by bringing this Adversary Proceeding to seek a determination that Defendant's claim is unsecured, thereby contradicting its earlier representations and proposed treatment. [*Id.*].

Plaintiff responds that Defendant mischaracterizes its position in both the Cash Collateral Motion and this adversary proceeding. [Doc. #10, p. 10].   Plaintiff explains that it acknowledged only that Defendant *may* assert a security interest based on its agreement and financing statement, and therefore proposed granting a replacement lien as a form of adequate protection. [Case No.

10

24-32443, Doc. #17, p. 2-3, ¶4; Case No. 24-32443, Doc. #42, p. 3, ¶4; Case No. 24-32443, Doc. #71, p. 3, ¶4; Case No. 24-32443, Doc. #100, p. 3, ¶4]. However, Plaintiff did not propose any cash payments, asserting that any security interest held by Defendant was junior to senior liens that exceeded the total value of all of the Debtor's cash collateral. [Case No. 24-32443, Doc. #7, pp. 10-11]. Instead, adequate protection for Defendant was only in the form of a "Replacement Lien" that would "have the same relative priority as the Pre-petition Liens" held by the respective creditors. [Case No. 24-32443, Doc. #7, p. 14].

The original Motion for use of cash collateral [Case No. 24-32443, Doc. #7] specifically stated:

> Binding Effect. This Order shall be binding upon the SBA, Fundation, the MCA Creditors and AFS. Nothing, however, in the Order shall be construed so as to prejudice or prevent the Debtor, a trustee appointed with respect to the Debtor, any future committee, the United States Trustee or any party-in-interest from challenging the validity, perfection or amount of the secured claims of such creditor and all rights of said party under Chapter 5 of the Bankruptcy Code are fully preserved notwithstanding anything in this Order to the contrary.

[Case No. 24-32443, Doc. #7, p. 14].

The four Interim Orders granting Debtor the right to use cash collateral followed the language of the Motion and expressly reserved the right to challenge the validity, priority, or secured status of Defendant's claim and to seek recharacterization of the claim as unsecured under the Bankruptcy Code. [Case No. 24-32443, Doc. #7, pp. 10-11; Case No. 24-32443, Doc. #17, p. 8, ¶J; Case No. 24-32443, Doc. #42, p. 8, ¶J; Case No. 24-32443, Doc. #71, p. 8, ¶J; Case No. 24-32443, Doc. #100, p. 8, ¶J].

Defendant asserts that if it had known Debtor was electing not to treat its claim as secured,

11

it would have objected to the use of the Receipts, thereby requiring the court to provide adequate protection under §363(e). [Doc. #4, p. 7, ¶¶16-17]. Defendant further argues that the Debtor is improperly attempting to benefit from both treating it as an unsecured creditor and using its collateral, and therefore should be estopped from asserting its current position. [*Id.*, pp. 7-8, ¶18]. Defendant maintains that it is entitled to adequate protection through means such as cash payments, replacement liens, or other forms of relief authorized under §361. [*Id.*]. Based on these circumstances, Defendant argues that the Debtor's Adversary Proceeding should be dismissed and that it must be afforded adequate protections consistent with the Bankruptcy Code.

Here, it appears that Defendant's argument misstates both the nature of the Plaintiff's prior representations and the legal standard applicable at this stage of the proceedings. Plaintiff did not "elect" to treat Defendant as a secured creditor. Rather, in its Cash Collateral Motion, the Plaintiff acknowledged that Defendant <u>may</u> claim a security interest in certain receivables by virtue of its financing documents and therefore proposed to offer a replacement lien – of the same quality and priority that it had at filing (which could be none) - as a form of interim adequate protection, while expressly reserving the right to challenge the validity and priority of that interest. [Case No. 24-32443, Doc. #7, p. 2, ¶4].

Moreover, Plaintiff filed its Complaint on January 31, 2025 [Case No. 24-32443, Doc. #47], asserting that the purported sale of unidentified and not-yet-existing "receipts" was not a true sale, and that Defendant's security interest – even if valid – was behind senior lenders with perfected security interests securing prior debts that exceeded the value of all of Debtor's assets. Yet, even after being served with Plaintiff's Complaint, no objections to the continued use of cash collateral were filed by Defendant prior to the entry of the third and fourth Interim Orders for use

12

of cash collateral.

The Bankruptcy Code appears to contemplate exactly this kind of provisional treatment of disputed security interests under §§361 and 363.   Those provisions do not preclude a debtor from later seeking a judicial determination that a creditor's claim is unsecured - particularly where, as here, the estate provided creditors with notice that it had reason to believe that Defendant's alleged security interest was subordinate to senior liens and lacks sufficient equity to support adequate protection beyond what was offered.

Defendant's assertion that it "would have objected" had it known the Debtor might later challenge its status appears to be unavailing.   The Plaintiff appears to have been transparent in reserving all rights to contest the secured status of Defendant's claim, and any alleged reliance by Defendant does not appear to have created a binding waiver or any kind of estoppel, especially where the underlying issue in the Complaint remains unresolved. *See*, *In re Hearn*, 337 B.R. 603, 613 (Bankr. E.D. Mich. 2006)(finding that a debtor's reservation of rights was sufficiently specific, where the plan explicitly identified the type of cause of action, the statutory basis, and the parties against whom the action could be brought, distinguishing it from blanket or generic reservations held to be ineffective).

At most, Defendant's contentions regarding adequate protection raise factual issues that are inappropriate for resolution on a motion to dismiss this Adversary Complaint on the pleadings.

iii.     *Plaintiff's Claims in the Complaint*

Plaintiff's Complaint sets forth a series of facts and allegations that it maintains are grounds for determining the validity (or non-validity), extent, and priority of Defendant's asserted lien, and further requests that the court determine that Defendant holds a wholly unsecured claim under 11

13

U.S.C. §506(a). In addition, Plaintiff asserts that Defendant's lien is void under §506(d) due to its inferior lien position and the absence of any equity in Debtor's collateral to support a secured claim.

First, Plaintiff's Complaint seeks a determination under Section 506(a). Accepting the factual allegations in the complaint as true, as the court must at this stage of the proceedings, the court finds that Plaintiff has alleged sufficient facts to state a plausible claim under 11 U.S.C. §506.

### 11 U.S.C. §506

Section 506(a)(1) provides in pertinent part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim ....

11 U.S.C. §506. Under §506(a)(1), a claim is only a secured claim to the extent there is value in the collateral to which that lien attaches. *In re Short*, 619 B.R. 655, 659-60 (Bankr. S.D. Ohio 2020). If all of the value in that collateral is secured by higher priority liens, then the claim which would otherwise be secured by that collateral is deemed to be unsecured. *See*, *Bank of Am., N.A. v. Caulkett*, 575 U.S. 790, 135 S.Ct. 1995, 1999, 192 L.Ed.2d 52 (2015). Section 506(d) provides, "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void." *See also*, *Caulkett*, 575 U.S. at 793, 135 S.Ct. at 1997.

Plaintiff's Complaint states that the security interest held by Defendant in Plaintiff's personal property is junior to the interests held by the SBA, Foundation, and United First. [Doc. #1, pp. 6-7, ¶¶25-27]. Plaintiff seeks a determination from the court confirming that Defendant's security interest is subordinate to these other creditors' interests. [*Id.*, p. 7, ¶27].

14

In its second claim, Plaintiff alleges that the fair market value of its personal property is $81,620.00. [*Id.*, p. 7, ¶31]. Given this asserted valuation and the superior claims of the SBA, Fundation, and United First, Plaintiff contends that Defendant's security interest does not attach to any remaining equity in the property. [*Id.*, ¶32]. Further, under §506(a), Plaintiff argues that Defendant's claim should be deemed wholly unsecured, and Defendant's lien should be declared void and released under §506(d). [*Id.*, pp. 7-8, ¶¶33-34]. Plaintiff further requests that this determination be incorporated into any confirmed plan. [*Id.*, p. 8, ¶35].

In its third claim, Plaintiff contends that if Defendant files a proof of claim in the bankruptcy case, such claim should not be allowed as a secured claim. [*Id.*, ¶37]. Defendant did file a proof of claim, and checked the box stating that it had a secured claim based on a lien on accounts receivable. [Case No. 24-32443, Claim No. 12-1, p. 2, ¶9]. Plaintiff is therefore asking the court to enter a judgment disallowing Defendant's proof of claim as a secured claim. [Doc. #1, p. 8, ¶38].

Here, the Plaintiff's bankruptcy schedules disclose that the value of its personal property is $81,620. [Case No. 24-32443, Doc. #64, p. 3-4, ¶¶5, 12, & 43]. The combined amounts owed to the SBA, Fundation, and United First total approximately $473,856.60, which appear to exceed the value of the collateral. Because the Defendant's lien attaches to the same property but is junior in priority, there would be no value securing its claim. Therefore, Plaintiff argues that the Defendant's claim is entirely unsecured under §506(a).

In construing the Complaint in the light most favorable to Plaintiff, and accepting all factual allegations as true, the court finds that there are sufficient facts to state a claim under Section 506 upon which relief can be granted.

15

iv.     *Defendant's Contention That The Transaction Was A Sale*

Defendant asserts that it purchased unidentified future receipts from the Debtor.   Many courts that have reviewed this type of transaction to determine whether it is a "sale" or a "loan" have looked at whether or not there is a real and effective "reconciliation provision" in the merchant cash advance agreement. *See e.g.*, *AKF, Inc. v. Haven Transportation Bus. Sols., Inc.*, 2024 WL 2941746 at *6, 2024 U.S. Dist. LEXIS 103271 at *15-17 (N.D.N.Y. June 11, 2024); *Div. 5, LLC v. Fora Fin. Advance, LLC*, 2024 U.S. Dist. LEXIS 200191 at **16-18 (S.D.N.Y. Nov. 4, 2024); *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2022 WL 1997207 at **8-14, 2022 U.S. Dist. LEXIS 100837 at **26-46 (S.D.N.Y. June 6, 2022); *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 122 N.Y.S.3d 309, 312 (N.Y. App. Div. 2020).   In the MCA Agreement filed by Defendant, the captions of its reconciliation provision specifically states: "Reconciliation and Adjusting the Periodic Amount (IMPORTANT PROTECTION FOR SELLER)" (capitalization in original). [Doc. #5, p. 2, ⁋4].

"The general rule of law is undoubted that no one can transfer a better title than he himself possesses.   *Nemo dat quod non habet*." *Barnard v. Campbell*, 55 N.Y. 456, 461, 14 Am. Rep. 289 (1874); *Mitchell v. Hawley*, 83 U.S. (16 Wall.) 544, 550, 21 L.Ed. 322 (1873)("No one in general can sell personal property and convey a valid title to it unless he is the owner or lawfully represents the owner.   *Nemo dat quod non habet*."); *JPMorgan Chase Bank, National Association v. Argus Information & Advisory Services Inc.*, 765 F. Supp.3d 367, 377 (D. Del. 2025)(citing, *Anderson Excavating, LLC v. Weiss World L.P.*, 638 F. Supp. 3d 525, 534 (W.D. Pa. 2022)("A cornerstone of property law is the maxim *nemo dat quod non habet*: a party cannot transfer rights that it does not have.").

16

While this "*Nemo dat*" maxim could arguably have application to wholly rejecting the purported "sale" of receipts not yet in existence, this court cites it for a narrower point: if there was a sale transaction, it was not completed until the future receipts came into existence. Thus, the Plaintiff-Debtor would have to create the receivables that would become receipts that – if this was truly a sales transaction – would then become Defendant's property, with possession acquired by the debiting of the "Account" per the MCA Agreement. [Doc. #5, p. 2, ¶3].

While most sales contracts have a short existence with limited responsibilities on both sides, the MCA Agreement continues to be an active transaction over a longer period of time, with important and ongoing responsibilities for each party that are set forth in the MCA Agreement. [Doc. #5]. Thus, for example, if the "reconciliation provision" was not illusory, but was, in fact, an important and ongoing responsibility of Defendant, "Buyer" would have substantial continuing obligations under the MCA Agreement.

There are a number of other continuing obligations stated in the MCA Agreement filed with the court by Defendant. For the "Seller", *i.e.* the Plaintiff-Debtor, the obligations include:

- Delivery of "the Specified Percentage of Future Receipts in accordance with this Agreement." [Doc. #5, p. 1];

- Seller shall provide Buyer with a copy of Seller's most recent monthly official Account [Doc. #5, p. 2, ¶4.c];

- Seller has a continuing obligation not to divert future receipts; "Seller must deposit all Future Receipts in the Account on a daily basis." [Doc. #5, p. 4, ¶13.a];

- Seller is obligated to authorize the release of any past or future tax returns to buyer. [Doc. #5, p. 4, ¶13.c];

- Seller has a continuing obligation under the MCA Agreement to comply with all laws, rules, permit requirements, authorizations, etc. associated with its business, "in which it is presently engaged and/or will engage in hereafter." [Doc. #5, p. 4, ¶13.d];

17

- Seller has an obligation not to close its business or change its name. [Doc. #5, p. 4, ⁋13.f];

- Seller has an obligation to pay all taxes promptly. [Doc. #5, p. 4, ⁋13.h];

- Seller has a continuing obligation to "provide Buyer with accurate and complete information regarding Seller's business as required by this Agreement." [Doc. #5, p. 5, ⁋13.k];

- Seller has a continuing obligation to allow Seller access to the premises of Seller's business for inspections, without prior notice." [Doc. #5, p. 5, ⁋14.c].

The Buyer's continuing rights and obligations include:

- Debiting Seller's Account every business day. [Doc. #5, p. 2, ⁋3];

- The right to notify any new bank of the MCA Agreement and to direct the bank to "remit to the Buyer all or any portion of the amounts received by such bank." [Doc. #5, p. 2, ⁋3];

- The right to seek a reconciliation on its own behalf. [Doc. #5, p. 2, ⁋4];

- If there is a conciliation requested, Buyer has to promptly recalculate Seller's average revenues. [Doc. #5, p. 2, ⁋4.c];

- If the "Periodic Amount" changes, Buyer is required to adjust the Periodic Amount within 3 calendar days. [Doc. #5, p. 2, ⁋4.d];

- Buyer must then notify seller of "any such adjustment". [Doc. #5, p. 2, ⁋4.d];

- Buyer has authorization from Seller to obtain information from Seller's "banks and brokers and its Payment Card processors". [Doc. #5, p. 3, ⁋11];

- Buyer can apply amounts received to its fees and charges prior to applying those funds to the Purchase Amount. [Doc. #5, p. 3, ⁋12];

- Buyer "may notify account debtors" and others of "Seller's sale of the Future Receipts" and may instruct them to pay Buyer directly. [Doc. #5, p. 5, ⁋14.b];

- Buyer may enter onto Seller's business premises during regular business hours for purpose of inspecting and checking Seller's transaction terminals, and more generally to ensure that Seller is not violating any other provision of the MCA Agreement. [Doc. #5, p. 5, ⁋14.c].

18

Generally, an "executory contract" is a contract "on which performance is due to some extent on both sides." *See e.g.*, *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 522 n.6, 104 S.Ct. 1188, 1194 n.6, 79 L.Ed.2d 482 (1984)("The Bankruptcy Code furnishes no express definition of an executory contract, see 11 U.S.C. § 365(a), but the legislative history to § 365(a) indicates that Congress intended the term to mean a contract "on which performance is due to some extent on both sides." H.R.Rep. No. 95-595, p. 347 (1977), see S.Rep. No. 95-989, p. 58 (1977)."); *Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469, 471 (6th Cir. 1989).

Courts have held that "an executory contract will not exist where the only remaining performance to be rendered is the payment of money." *In re Arts Dairy, LLC*, 417 B.R. 495, 502 (Bankr. N.D. Ohio 2009)(citing, 31 Williston on Contracts § 78:410). But here, as noted above, there appear to be a number of continuing obligations on both sides, and – at least for the Seller (*i.e.*, Plaintiff-Debtor) – failing to comply with any of its obligations is stated to be a breach of the MCA Agreement. [Doc. #5, p. 5, ¶15]("**Remedies for Seller's Breach of this Agreement.** If Seller violates any term or covenant in this Agreement, Buyer may proceed to protect and enforce its rights . . . .").

The Debtor's Chapter 11 Plan[6] [Case No. 24-32443, Doc. #64, Article 6(b), p. 22] provided

---

6/ The Subchapter V Chapter 11 Plan provided that all of the Debtor's MCA creditors, including Cashfloit, would be treated as having "an entirely unsecured claim for purposes of 11 U.S.C. § 506." [Case No. 24-32443, Doc. #64, p. 17]. No objections were filed to Debtor's proposed Plan. *See e.g.*, [Case No. 24-32443, Doc. #103]. Nevertheless, the court required that the Order confirming the Chapter 11 Plan except Defendant from the consequence of the Plan's treatment of its claim until the court could address the issues raised in this Adversary Proceeding. [Case No. 24-32443, Doc. #104, p. 2]. While the court did not allow the provisions of the Chapter 11 Plan to moot these issues before the Motion could be addressed, the fact that the Chapter 11 Plan was confirmed, without objection by Cashfloit - specifically treating it's claim as an unsecured claim - is another reason why denying Defendant's Motion to Dismiss is warranted. Going forward, Defendant will need to address the effect the court should give to the confirmed Chapter 11 Plan, both as to the rejection of executory contracts and as to the specific treatment provided to its claim in the Plan.

that all executory contracts that were not specifically assumed were rejected. The MCA Agreement was not listed as one of the executory contracts that was assumed. [Case No. 24-32443, Doc. #64, Article 6(a), p. 22]. The Certificate of Service for the Chapter 11 Plan reflects that it was served on CashFloit, LLC. [Case No. 24-32443, Doc. #104]. Thus, if the MCA Agreement is, in fact, a rejected executory contract pursuant to Debtor's confirmed Chapter 11 Plan, 11 U.S.C. §365(g)(1) provides that the contract was breached as of a date "immediately before the date of the filing of the petition" and 11 U.S.C. §502(g) "requires that damages be fixed as of a date 'before the date of the filing of the petition.'" *See*, *Montreal v. Am. HomePatient, Inc. (In re Am. HomePatient, Inc.)*, 414 F.3d 614, 618 (6th Cir. 2005). "The effect of the breach is to allow the party injured by the rejection to seek allowance of its resulting claim as a pre-petition unsecured claim." *Id*, at 617; *see also*, *In re Avianca Holdings S.A.*, 127 F.4th 414, 421 (2d Cir. 2025)("a creditor whose claim arises from a rejected executory contract will have only 'an unsecured prepetition claim against the estate' for the breach.").

Again, if the MCA Agreement was executory and was rejected, it appears that Defendant would be an unsecured creditor, irrespective of whether one party or the other prevailed in obtaining a final, non-appealable order that the transaction was a "sale" or a "loan" – if it was an executory "sale" contract that was rejected by the Chapter 11 Plan, Defendant would arguably have just a general unsecured claim.[7]

This is another reason (along with the discussion in footnote 6) why the Motion to Dismiss should be denied, because Defendant's failure to object to the proposed Chapter 11 Plan may have

---

7/ On the other hand, if the transaction is held to be a loan: Defendant's security interest is asserted to be behind senior secured lenders and – assuming the transaction was not void as a usurious loan under New York law - would be properly treated as an unsecured claim.

mooted its defense that the transaction was a "true sale."  This, and the other issues discussed in this decision, can be addressed at the next pre-trial on this matter.

Accordingly, for all of the reasons stated above, the court holds that Plaintiff's Complaint states a plausible claim for relief and should be allowed to proceed.

**THEREFORE,** for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendant's Motion to Dismiss [Doc. #4] be, and hereby is, **DENIED**.

**IT IS FURTHER ORDERED** that this matter will be set for further pretrial hearing to schedule discovery, and/or a trial date and related deadlines.

**IT IS SO ORDERED.**